**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PEARL H. LEONARD,**

                                        **Plaintiff,**

                  **v.**                                        **5:05-CV-1084**
                                                                **(FJS/GHL)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES**                                **OF COUNSEL**

**OLINSKY & SHURTLIFF, LLP**            **JAYA SHURTLIFF, ESQ.**
300 South State Street, 5th Floor
Syracuse, New York 13202
Attorneys for Plaintiff

**OFFICE OF THE UNITED**                **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff filed an application for disability insurance benefits and supplemental security

income on March 16, 2004.  _See_ Administrative Transcript ("Tr.") at 68-70, 136-39.  Plaintiff's

applications were initially denied.  _See id._ at 40, 130-35.  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on September 22, 2004, before ALJ Charles

Bridges.  _See id._ at 150-75.  On November 18, 2004, the ALJ issued a decision denying Plaintiff's

applications. *See id.* at 29-38.  The ALJ's decision became the Commissioner's final decision

when the Appeals Council denied Plaintiff's request for review on November 18, 2004.  *See id.* at

3-5.

On August 30, 2005, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) to

review that final decision.  In support of her argument that the Court should reverse Defendant's

decision and award her benefits, Plaintiff asserted that (1) the ALJ failed to develop the record

with regard to Plaintiff's mental impairment; (2) the Court should accept the additional medical

evidence that Plaintiff included with her brief in the record; (3) Plaintiff failed to make a

knowing and voluntary waiver of her right to representation and was, therefore, prejudiced; (4)

the ALJ failed to meet his duty under Social Security Ruling 00-4p to ensure that the vocational

expert's testimony was consistent with the *Dictionary of Occupational Titles*; and (5) the

hypothetical question that the ALJ posed to the vocational expert was improper.  *See* Plaintiff's

Brief at 8-18; Plaintiff's Reply at 1-4.

To the contrary, Defendant contended that the Court should dismiss Plaintiff's complaint

because there was substantial evidence in the record to support the ALJ's decision and the new

evidence provided no basis for remand.

## II. BACKGROUND

### A.     Personal history

Plaintiff was forty years old at the time of the administrative hearing.  *See* Tr. at 155.

Plaintiff had obtained her high school degree, *see id.*, and had past relevant work experience as a

bus monitor and as a cleaner, *see id.* at 86, 156.  Plaintiff alleged disability due to the conditions

of her back and her heel.  *See id.* at 97.  Plaintiff also alleged that she experienced chest pain.
*See id.* at 161.


**B.      Medical evidence in the record**

       *1. Ted Triana, D.O.*

       Plaintiff received treatment from Ted Triana, D.O., for her heel and back.[1]  *See* Tr. at

108-11, 126.  On April 24, 2003, Dr. Triana noted that Plaintiff "still complain[ed] of right heel

pains and indicate[d] that she ha[d] seen a podiatrist on multiple occasions . . . [and] [s]he was

prescribed a cushion for her shoe."  *See id.* at 111.  Dr. Triana diagnosed Plaintiff as suffering

from right calcaneal spurs, noting that "[t]his was the finding of our x-rays in the past."  *See id.*

He recommended that Plaintiff continue taking Darvocet and treating with the podiatrist.  *See id.*

       On July 23, 2003, Dr. Triana noted that Plaintiff stated that the Darvocet helped.  *See id.*

at 110.  Dr. Triana again prescribed Darvocet.  *See id.*

       A "Triage/Medical Transmittal Form" to Dr. Triana dated March 11, 2004, states that

Plaintiff "need[ed] to be seen . . . . [She was] under a lot of pain in her back."  *See* Tr. at 108.

       On June 24, 2004, Dr. Triana stated on a prescription slip that Plaintiff was unable to

perform "any activities at work which require[d] prolonged use of her legs (such as walking,

standing, [and] climbing stairs) until she is evaluated by the surgeon."  *See* Tr. at 126.

---

       [1] Plaintiff stated that her back problems began on June 23, 1992, when she fell down
stairs.  *See* Tr. at 157.  She claimed that, at that time, she went to a hospital for treatment.  *See id.*

### 2. University Hospital

On May 5, 2004, Plaintiff was treated at the Emergency Room of University Hospital for nonspecific chest pain and dyspnea. *See* Tr. at 122. No specific cause for Plaintiff's chest pain was identified. *See id.* at 124. Plaintiff was treated with Motrin. *See id.* at 122.

### 3. Myra Shayevitz, M.D.

On March 30, 2004, Myra Shayevitz, M.D., performed an orthopedic examination of Plaintiff. *See* Tr. at 116-19. During the examination, Plaintiff's gait was guarded; she was limited in her ability to squat; and she arose from a chair with some difficulty. *See id.* at 118. In addition, Plaintiff's forward and lateral flexion of the thoracic and lumbar spine was limited; she had lumbar tenderness and right and left SI notch tenderness; her straight leg raising on the right produced back pain; she had a decreased sensation to pinprick on the right in the anterior thigh, the calf, and the big and small toes; and her right heel was tender. *See id.*

Dr. Shayevitz noted that an x-ray of Plaintiff's lumbar sacral spine showed disc space narrowing. *See* Tr. at 118, 120. In addition, an x-ray of Plaintiff's right foot and toes showed small calcaneal spur. *See id.*

Dr. Shayevitz diagnosed Plaintiff as suffering from low back pain and right heel pain. *See id.* at 118. Dr. Shayevitz noted that Plaintiff "simply did not sit square throughout the evaluation. She was on one side or the other." *See id.* Dr. Shayevitz opined that Plaintiff was "limited in any standing, walking, or stair climbing. She [could] pick up something very, very light, probably not repetitively if she had to bend over." *See id.*

-4-

***4. Surgery Appointment***

The record indicates that Plaintiff had an appointment with "Ortho General" at University Hospital on July 19, 2004.  *See* Tr. at 121.  This evidence corresponds with Plaintiff's assertion that she had an appointment on this date for an "operation," which apparently was for her foot. *See id.* at 44.

## III. DISCUSSION

**A.       Disability determination**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work. . . .

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520 and § 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the

> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits h[er] physical or mental
> ability to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider h[er] disabled
> without considering vocational factors such as age, education, and
> work experience . . . . Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, [s]he has the residual functional capacity to
> perform h[er] past work.  Finally, if the claimant is unable to
> perform h[er] past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps.  However, if

the plaintiff establishes that her impairment prevents her from performing her past work, the

burden then shifts to the Commissioner to prove the final step.  *See id.*


**B.      Scope of review**

In reviewing the Commissioner's final decision, a court must determine whether the

Commissioner applied the correct legal standards and whether there is substantial evidence in the

record as a whole to support the decision.  *See Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)) (other citations

omitted).  A reviewing court, however, may not affirm an ALJ's decision if it reasonably doubts

that the ALJ applied the proper legal standards even if it appears that there is substantial evidence

to support that decision.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  In addition,

an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow

a court to determine whether substantial evidence supports his decision.  *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted).  A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (citations omitted).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quotation omitted). "It is more than a mere scintilla or a touch of proof here and there in the record." *Id.*

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Id.* (citations omitted).  "However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision." *Lewis v. Comm'r of Soc. Sec.*, No. 6:00 CV 1225, 2005 WL 1899399, *1 (N.D.N.Y. Aug. 2, 2005) (citations omitted).

In the present case, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date; (2) Plaintiff's lumbar disc disorder and right foot heel spur were considered "severe" based on the regulations; (3) Plaintiff's impairments did not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) Plaintiff's allegations regarding her limitations were not totally credible; (5) Plaintiff retained the

RFC to perform a limited range of sedentary work;[2] (6) Plaintiff was unable to perform her past relevant work; (7) Plaintiff was a younger individual who had a high school education with no transferable skills from any past relevant work; and (8), based on the Medical-Vocational Guidelines, a conclusion of "not disabled" was directed.  *See* Tr. at 37.

Plaintiff takes issue with a number of the ALJ's findings and his ultimate conclusion of non-disability.  The Court will address each of Plaintiff's arguments in turn.

### 1. Duty to develop the record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).  This duty is heightened where a claimant appears *pro se*.  *See Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002) (citing *Cullinane v. Secretary of Dep't of Health and Human Servs.*, 728 F.2d 137, 139 (2d Cir. 1984) (remand for new hearing appropriate where ALJ failed to assist *pro se* litigant in securing all relevant medical testimony)) (other

---

[2]         Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

"Sedentary work  . . . generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day."  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citations omitted).

citation omitted). Therefore, the ALJ must "'"scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."'" *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (quoting *Echevarria*, 685 F.2d at 755 (quoting *Hankerson*, 636 F.2d at 895)). The ALJ is obligated to explore the facts by asking questions of, and obtaining relevant medical records from, *pro se* claimants in order to assist them in developing their cases. *See id.* at 11-12.

Similarly, "[i]n *pro se* cases, a reviewing court must perform a 'searching investigation' of the record to ensure that the claimant's rights were protected." *Maestre v. Apfel*, No. 96 Civ. 8273, 1998 WL 477950, *4 (S.D.N.Y. Aug. 13, 1998) (quoting *Robinson v. Secretary of Health & Human Servs.*, 733 F.3d 255, 258 (2d Cir. 1984)) (other citation omitted). "Where the reviewing court finds gaps in the administrative record, the court may either remand the case to the Commissioner to further develop the evidence, or, where the record provides sufficient proof of disability, reverse the case." *Maestre*, 1998 WL 477950, at *4 (citing *Pratts*, 94 F.3d at 39; *Parker*, 626 F.2d at 235).

### a. Possible mental impairment

Plaintiff argues that the ALJ erred by failing to develop the record with regard to a possible mental impairment. *See* Plaintiff's Brief at 9; Plaintiff's Reply at 2. Defendant argues that Plaintiff failed to allege that she suffered from a mental impairment; and, thus, the ALJ committed no error. *See* Defendant's Brief at 5.

The regulations place the burden of supplying all relevant medical evidence on the claimant. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c). Moreover, the Social Security Administration is required to "consider only impairment(s) which (a claimant) say(s) (he or she)

ha(s) or about which (it) receive(s) evidence." 20 C.F.R. §§ 404.1512(a), 416.912(a).  However, if the record shows that a claimant may suffer from a mental impairment, the ALJ is required to develop the record regarding any possible mental impairment even if the claimant has not alleged that disorder as the basis of disability.  *See Prentice v. Apfel*, 11 F. Supp. 2d 420, 426 (S.D.N.Y. 1998).  The ALJ may develop the record by recontacting the claimant's treating sources for more information or by ordering a consultative examination.  *See* 20 C.F.R. §§ 404.1512(e)-(f), 416.912(e)-(f).

In this case, when Plaintiff applied for benefits, she indicated that she attended special education classes in high school.  *See* Tr. at 101.  Plaintiff added, "[I] had problems with reading and math."  *See id.*  Plaintiff also indicated that she was unable to count change, handle a savings account, and use a checkbook/money orders.  *See id.* at 81.  Finally, at the hearing, Plaintiff stated, "I'm not good at reading or writing."  *See id.* at 173.

The record provides no indication that the ALJ developed the record with regard to any possible mental impairment.  The ALJ failed to probe into, inquire of, and explore any possible mental impairment even though Plaintiff was proceeding *pro se* and, as noted, clearly indicated that she attended special education classes in high school; had problems with reading, writing, and math; and was unable to count change, handle a savings account, and use a checkbook/money orders.  *See id.* at 81, 101, 173.  Given this information, the Court concludes that the ALJ failed to fulfill his duty to develop the record with regard to a possible mental impairment.

### b. *Treating physician's opinion*

Plaintiff alleges that the ALJ erred by failing to obtain an opinion about her limitations from her treating physician, Dr. Triana. *See* Plaintiff's Brief at 14.

Under the regulations, the ALJ's duty to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in those regulations.[3] *Devora*, 205 F. Supp. 2d at 172-73.  The regulations thus provide that, "[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available."  20 C.F.R. §§ 404.1512(e), 416.912(e).  The regulations further provide that

> [w]e will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

As noted, Dr. Triana wrote on a prescription slip that Plaintiff was unable to perform "any activities at work which require prolonged use of her legs (such as walking, standing, [and] climbing stairs) until she is evaluated by the surgeon." *See* Tr. at 126.  The record fails to indicate that the ALJ contacted Dr. Triana for clarification of his opinion or a more detailed opinion about Plaintiff's functional limitations.

---

[3] An ALJ must give a treating physician's medical opinions "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Moreover, Plaintiff stated that Dr. Triana authored an additional statement "saying that he [doesn't] want me working right away until he sees me again." *See* Tr. at 164-65.  The ALJ directed Plaintiff to obtain the statement and "fax" it to him.  *See id.* at 165.  Although the Second Circuit has suggested that an ALJ may satisfy his duty to develop the record by directing a *pro se* claimant to obtain her own medical records, *see Jones v. Apfel*, 66 F. Supp. 2d 518, 539 n.3 (S.D.N.Y. 1999) (citations omitted), in none of those cases was there a question of a possible mental impairment.

In light of the foregoing, the Court concludes that the ALJ erred by failing to contact Dr. Triana for additional evidence or clarification because the regulations clearly direct the ALJ to recontact treating sources in instances such as those present here.

### 2. Right to representation

Plaintiff argues that she failed to receive adequate written or verbal notice of her right to representation.  *See* Plaintiff's Brief at 10.  Plaintiff claims that the lack of notice rendered her waiver ineffective and prejudiced the development of her case.  *See id.*  Defendant claims that Plaintiff made a knowing and voluntary waiver of her right to representation and suffered no prejudice.  *See* Defendant's Brief at 7-8.

Claimants have a statutory right to notification of their options for obtaining legal representation in SSI and DIB claims.  *See* 42 U.S.C. § 406(c) ("The Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security.  Such notification shall also

-12-

advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge."); *see also* 20 C.F.R. §§ 404.1706, 416.1506 ("[W]e will include with the notice of that determination or decision information about your options for obtaining an attorney to represent you in dealing with us.  We will also tell you that a legal services organization may provide you with legal representation free of charge if you satisfy the qualifying requirements applicable to that organization.").

### a. Knowing and effective waiver

"Once a claimant is provided with adequate notice of [her] right to counsel [s]he may effectively waive the option to proceed with counsel in writing or orally before the ALJ." *Vaughn v. Apfel*, No. 98 Civ. 0025(HB), 1998 WL 856106, *4 (S.D.N.Y. Dec. 10, 1998) (citing *Frank v. Chater*, 924 F. Supp. 416, 423 (E.D.N.Y. 1996)) (other citation omitted).

In this case, Plaintiff received several written notices advising her of her right to representation.  *See* Tr. at 127, 144.  Moreover, on one form in the record, Plaintiff indicated by checking a box that she "wish[ed] to proceed without counsel."  *See id.* at 61.  However, at the hearing, Plaintiff initially provided a contradictory response, as follows:

> **ALJ:**   Ms. Leonard, do you have representation today?  You have anybody that's going to help you with this case, your attorney or anybody?
>
> **Plaintiff:**   **No, I don't.**
>
> **ALJ:**   Did you have the opportunity to get a representative or attorney?
>
> **Plaintiff:**   **No.**

**ALJ:** Do you want to get a representative or attorney?

**Plaintiff:** **Yes.**

**ALJ:** Would you want me to continue this case so that you can get a representative?

**Plaintiff:** **I've been trying to get one, but they kept telling me call back, call back, and I still haven't got one.**

**ALJ:** Okay. Now you can go ahead with your case here today, if you so desire. But if you feel like you want to get additional time, then we'll give you the time to do that. But it's up to you. You don't have to have an attorney today if you don't want to, but you – once we start the hearing, we're going to hold you to it. So you have to make up your mind whether or not that's what you want me to do here today. Because what I need to do is explain to you all your rights and that's what I'm trying to do because you're not represented. But once you make up your mind that you want to go forward with your hearing, then we'll go forward with it, no matter how it turns out.

**Plaintiff:** Go forward.

**ALJ:** You want to go forward with your hearing today?

**Plaintiff:** Yes, I do.

**ALJ:** Okay, ma'am. I just want to make sure it's clear that you know this so we won't have these situations – you know, it don't turn out and – because we didn't give you an opportunity. Okay.

*See id.* at 153-54 (emphasis added).

First, the Court notes that the ALJ failed to advise Plaintiff explicitly that she had a right to a representative. *See* Tr. at 153. Under the regulations, an ALJ is required to advise a claimant of certain procedural rights, which include the right to have a representative at the

-14-

hearing. *See* 20 C.F.R. § 404.916(b)(2).  In this case, the ALJ simply asked Plaintiff whether she

was represented; whether she had had an opportunity to secure a representative; whether she

wanted to obtain a representative; and whether she wished to proceed without a representative.

*See* Tr. at 153.[4]

 Second, the ALJ's instructions to Plaintiff were somewhat unclear.  For instance, the ALJ

informed Plaintiff that she had "to make up [her] mind" as to whether she wished to "go ahead

with [her] case."  *See* Tr. at 153.  It is possible that Plaintiff perceived that the ALJ was asking

her whether she wanted to proceed with her overall disability claim, as Plaintiff simply

responded, "Go forward."  *See id.*  In addition, as noted, there is a question of a possible mental

impairment in this case.

 Third, although Plaintiff received written notices regarding her right to representation, she

stated that she had problems reading, writing and doing math and that she had attended special

education classes in high school.  *See* Tr. at 101, 173.

 In light of the foregoing, the Court is unable to conclude that Plaintiff knowingly waived

her right to representation.

---

 [4] The ALJ also failed to explain the benefits of obtaining counsel, the possibility of free
counsel or a contingency fee arrangement, and notification of the statutory twenty-five percent
withholding limitation on attorney's fees.  *See Frank v. Chater*, 924 F. Supp. 416, 423-24
(E.D.N.Y. 1996) (holding that ALJ erred by failing to provide "(1) an explanation of the benefits
of having an attorney to aid in the proceedings; (2) notification of the possibility of seeking free
counsel or a contingency arrangement; and (3) notification regarding the statutory twenty-five
percent withholding limitation on attorneys' fees in cases brought under Title II as provided in 42
U.S.C. § 406(a) as well as the fee approval process generally" (footnote and citations omitted)).

### b. Prejudice

Even if an ALJ does not sufficiently inform a claimant of her rights, the lack of counsel, in and of itself, is not a sufficient ground upon which a reviewing court may base a decision to remand or reverse. *See Alvarez v. Bowen*, 704 F. Supp. 49, 52 (S.D.N.Y. 1989) (citation omitted). A plaintiff must show prejudice or unfairness in the proceeding. *See Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 142 (1st Cir. 1987); *Osorio v. Barnhart*, No. 04 Civ. 7515, 2006 WL 1464193, *9 (S.D.N.Y. May 30, 2006) (citations omitted). "[F]or remand, the claimant must demonstrate that the ALJ failed to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Frank*, 924 F. Supp. at 427 (footnote omitted).

In this case, the ALJ failed scrupulously and conscientiously to probe into, inquire of, and explore all the relevant facts, particularly with regard to whether Plaintiff suffered from a possible mental impairment. The ALJ also failed to recontact Plaintiff's treating physician, Dr. Triana. Therefore, the Court concludes that Plaintiff's lack of representation clearly prejudiced her.

### 3. Vocational expert testimony

Where a claimant is able to demonstrate that her impairments prevent a return to past relevant work, the burden shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citations omitted); 20 C.F.R. §§ 404.1560(c), 416.960(c). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant]

live[s] or in several other regions in the country."  20 C.F.R. §§ 404.1566(a), 416.966(a).  The

ALJ may apply the grids or consult a vocational expert ("VE").  *See Heckler v. Campbell*, 461

U.S. 458, 462 (1983); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt.

P, App. 2.

     A VE may testify about the existence of jobs in the national economy and about the

claimant's ability to perform any of those jobs given her functional limitations.  *See Colon v.*

*Comm'r of Soc. Sec.*, No. 6:00CV0556, 2004 WL 1144059, *6 (N.D.N.Y. Mar. 22, 2004).  A

VE's testimony is "only useful if it addresses whether the particular claimant, with h[er]

limitations and capabilities, can realistically perform a particular job."  *Aubeuf v. Schweiker*, 649

F.2d 107, 114 (2d Cir. 1981) (citation and footnote omitted).  "The ALJ is responsible for

determining the claimant's capabilities based on all the evidence, . . . and the hypothetical

question(s) must present the full extent of the claimant's impairments to provide a sound basis for

the [VE's] testimony."  *Colon*, 2004 WL 1144059, at *6 (internal citation and other citations

omitted).  However, "there must be 'substantial record evidence to support the assumption upon

which the [VE] base[s] his opinion.'"  *Id.* (quoting *Dumas*, 712 F.2d at 1554) (other citations

omitted).

### a. Consistency of testimony

     Plaintiff argues that the ALJ erred by failing to ask the VE whether her testimony was

consistent with the *Dictionary of Occupational Titles* ("*DOT*") and to obtain explanations for any

inconsistencies.  *See* Plaintiff's Brief at 15-16.  Defendant claims that the VE adequately

explained why a portion of her findings conflicted with the *DOT* and that her testimony regrading

two other jobs did not conflict with the *DOT*.  *See* Defendant's Brief at 8-9.

Social Security Ruling ("SSR") 00-4p requires, as part of the adjudicator's duty to develop the record fully, that the adjudicator inquire, on the record, about whether or not there is a consistency between the evidence that the VE provides and the *DOT*.  *See* SSR 00-4p, 2000 WL 1898704, *2 (SSA Dec. 4, 2000).  Occupational evidence that a VE provides generally should be consistent with the occupational information that the *DOT* provides.  *See id.*  If the VE's evidence appears to conflict with the *DOT*, the ALJ should obtain a reasonable explanation for the apparent conflict.  *See id.*  Reasonable explanations include that the VE may be able to provide more specific information about jobs than the *DOT*.  *See id.* at *3.

In his decision, the ALJ stated that the VE's testimony was consistent with the *DOT*.  *See* Tr. at 36.  A review of the hearing transcript suggests that the ALJ asked the VE if her testimony was consistent with the *DOT*.  Near the beginning of the VE's testimony, the ALJ asked the VE, "Is your – consistent or inconsistent with the *DOT*?"  *See* Tr. at 168.  The VE responded, "It's consistent with the *DOT*."  *See id.*  Thereafter, in response to a hypothetical question that the ALJ posed, the VE testified about other work that existed in the economy, stating that the hypothetical individual could perform work as a beverage order clerk, surveillance system monitor, and electronic assembler position.  *See id.* at 171-72.  The VE stated that the *DOT* described the electronic assembler position as light work; but, in her opinion, a "portion" of these kinds of jobs was sedentary.  *See id.* at 172.  The VE explained that in her "experience in going to various plants and getting various job descriptions about this, there's a portion of these jobs . . . which were [sic] sedentary.  They're bench work [and are] done at a table.  It can – you can also have the sit/stand option.  Lifting is well under ten pounds . . . . [I]t is unskilled work."  *See id.*

-18-

Accordingly, although the ALJ's statement in his decision regarding the consistency of the VE's testimony was not entirely correct, the record suggests that the ALJ asked the VE if her testimony was consistent with the *DOT*; and, when the VE indicated that a "portion" of one of the positions was inconsistent with the *DOT*, the VE provided a reasonable explanation for the inconsistency.  Therefore, the Court finds that the ALJ committed no error in this regard.

### b. Hypothetical questions

Plaintiff argues that the hypothetical questions that the ALJ posed to the VE failed to account properly for any mental limitations.  *See* Plaintiff's Brief at 16-18.

"The ALJ is responsible for determining the claimant's capabilities based on all the evidence, . . . and the hypothetical question(s) must present the full extent of the claimant's impairments to provide a sound basis for the [VE's] testimony."  *Colon*, 2004 WL 1144059, at *6.  However, "there must be 'substantial record evidence to support the assumption upon which the vocational expert based his opinion.'"  *Id.* (quoting *Dumas*, 712 F.2d at 1554) (other citations omitted).

In the hypothetical question that he posed to the VE, the ALJ asked the VE to assume that the hypothetical individual had, among other things, a high school education.  *See* Tr. at 168. The ALJ also specifically stated that there was "no indication . . . of any mental problems."  *See id.* at 170.  In response, the VE described the other work available that the hypothetical individual could perform.  *See id.* at 171-72.  The ALJ then asked Plaintiff to state why she would be unable to perform the other work available.  *See id.* at 173.  The following exchange took place:

> **Plaintiff:**   I'm not good at reading or writing.
>
> **ALJ:**   Okay. Ms. Vasco [(the VE)], she's not good at reading or writing.  Can she do these jobs if she's not good at reading or writing?
>
> **VE:**   The levels required for this are – they're the lower levels.  So even though on paper she has a high school education, if she can read approximately at the sixth-grade level, she would be able to perform these jobs.
>
> **ALJ:**   Okay.  All right.  Ms. Leonard, they say that if you can read one of these little readers, you could probably do this.  You don't have to know that much.  If you –
>
> **Plaintiff:**   Okay.
>
> **ALJ:**   – do it . . . .

*See id.*

As the foregoing illustrates, the ALJ made no inquiry about Plaintiff's reading or writing abilities.  Instead, the ALJ and the VE simply assumed that Plaintiff could read "at a sixth-grade level."  Moreover, the VE never addressed Plaintiff's limited ability to write.  Accordingly, the Court is unable to find that there was substantial evidence to support the assumptions about Plaintiff's education level and abilities to read and write.

### 4. Additional evidence

Plaintiff submitted a report of an intelligence evaluation that Jeanne Shapiro, Ph. D., performed on February 24, 2006.[5]  *See* Plaintiff's Brief at Exhibit "1."  Dr. Shapiro found that

---

[5] Plaintiff's counsel explained that Plaintiff obtained this report during the pendency of a subsequent application that Plaintiff filed and noted that Plaintiff had legal representation in that proceeding.  *See* Plaintiff's Brief at 2.

Plaintiff had a full-scale IQ score of fifty-seven and that Plaintiff was "functioning in the mild range of mental retardation."  *See id.* at 3.  Dr. Shapiro noted that Plaintiff appeared to be incapable of reading, doing arithmetic, and writing at an age-appropriate level.  *See id.* at 3-4.  In a Medical Source Statement, Dr. Shapiro indicated that Plaintiff exhibited marked-to-extreme limitations in her abilities to understand and remember detailed instructions and to carry out detailed instructions.  *See id.* at 6.

The Social Security Act provides that a court may remand a case to the Commissioner to consider additional evidence but only if the evidence is new, material, and there is good cause for failure to incorporate that evidence into a prior proceeding.  *See* 42 U.S.C. § 405(g) (sentence six).  The Second Circuit has developed a three-part showing that is required to support a sentence six remand.  *See Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).  First, the evidence must be "new" and not merely cumulative of what is already in the record.  *See id.* (citing *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)).  Second, in order for the new evidence to be "material," it must be "both relevant to the claimant's condition during the time period for which benefits were denied and probative . . . ."  *Id.* (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975)).  The Second Circuit has also held that the concept of "materiality" requires a finding that there is "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently."  *Id.* (citations omitted).  Third, the claimant must show that there is good cause for failing to present the evidence earlier.  *See id.* (citation omitted).

### a. First requirement: "New" evidence

There is no dispute that Dr. Shapiro's report is "new."  *See* Plaintiff's Brief at 8-9;

Defendant's Brief at 5.  Moreover, the report clearly is not cumulative of evidence already

contained in the record as the Court previously found that the ALJ failed to develop the record

with regard to a possible mental impairment.

### b. Second requirement: Materiality

The parties clearly disagree about whether Dr. Shapiro's report is material.  Plaintiff

argues that the report "is indicative of a cognitive delay" that was present during the time period

for which benefits were denied.  *See* Plaintiff's Brief at 9.  Plaintiff points out that she took

special education classes while in high school and testified that she was "not good at reading or

writing."  *See id.*  Plaintiff also claims that the new evidence shows that her condition meets

Listing 12.05(B) and, together with her severe back impairment, meets Listing 12.05(C).  *See id.*

at 9.[6]

Defendant argues that the report is not material because Plaintiff failed to allege a

disabling mental impairment and because there is no evidence of a mental impairment in the

record.  *See* Defendant's Brief at 5.  Defendant also argues that, in order for Listing 12.05 to be

met, there must be evidence that demonstrates or supports an onset of the impairment before age

twenty-two; and Defendant claims that there is no such evidence.  *See id.* at 6.

_____

[6] Plaintiff's counsel states that Plaintiff was found to be disabled under Listing 12.05(B)
in connection with her subsequent application for benefits.  *See* Plaintiff's Brief at 1.

Listing 12.05 of the listed impairments provides as follows:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

Or

B. A valid verbal, performance, or full scale IQ of 59 or less;

Or

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Or

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Mental retardation is a "life long condition." *Vasquez-Ortiz v. Apfel*, 48 F. Supp. 2d 250, 257 (W.D.N.Y. 1999) (citation omitted).  Therefore, "'an IQ score is presumed to accurately reflect an individual's IQ throughout that person's entire life, regardless of the individual's age when the IQ test is administered.'"  *Rivera v. Apfel*, No. 98-CV-0619, 2000 WL 1568596, *3 (W.D.N.Y. Sept. 29, 2000) (quoting *Holmes v. Apfel*, No. 98 C 5087, 1999 WL 731769, at *5 (N.D. Ill. Aug. 31, 1999)) (citing *Vasquez-Ortiz*, [48 F. Supp. 2d] at 257 ("[a]bsent any evidence of a change in the [claimant's] intellectual functioning, it is appropriate to assume that [a claimant]'s IQ has not changed since [her] twenty-second birthday")).

Accordingly, because there is no suggestion of a change in Plaintiff's intellectual functioning, Dr. Shapiro's finding that Plaintiff's full scale IQ score is fifty-seven is presumed to be an accurate reflection of Plaintiff's IQ throughout her entire life.  Therefore, Dr. Shapiro's report is clearly relevant to Plaintiff's condition during the time period for which benefits were denied and is probative of her mental capacity.

Moreover, there is a reasonable possibility that Dr. Shapiro's report would have influenced the ALJ to decide Plaintiff's applications differently because Plaintiff satisfies the requirements of Listing 12.05(B) that a claimant demonstrate a full scale IQ score of fifty-nine or less.[7]  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(B).  With regard to the requirement that the evidence demonstrates or supports onset of the impairment before age twenty-two, it is presumed that this IQ score accurately reflects Plaintiff's life-long IQ, regardless of Plaintiff's age when the IQ test was administered.  *See Rivera*, 2000 WL 1568596, at *3; *Vasquez-Ortiz*, 48 F.

_____

[7] Defendant admits that Plaintiff's IQ score meets Listing 12.05(B) and/or Listing 12.05(C).  *See* Defendant's Brief at 6.

Supp. 2d at 257.

Accordingly, the Court concludes that Dr. Shapiro's report is material because it is relevant to Plaintiff's condition during the time period for which benefits were denied and probative of her mental capacity and because there is a reasonable possibility that the evidence would have influenced the ALJ to decide Plaintiff's applications differently.

### c. Third requirement: Good cause

The Court found that the ALJ failed to fulfill his duty to develop the record regarding a possible mental impairment.  This finding, coupled with the fact that Plaintiff proceeded *pro se*, establishes good cause for failure to present this evidence earlier.

Accordingly, for all these reasons, the Court finds that Dr. Shapiro's report constitutes new and material evidence that forms a basis for remand.

### 5. Disposition

As relief, Plaintiff asks the Court to remand this matter to the Commissioner with a directed finding of disability for the limited purpose of calculating benefits.  *See* Plaintiff's Brief at 10, 18.

A reviewing court has the authority to reverse with or without remand.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  *See Curry*, 209 F.3d at 124 (citation omitted).  Reversal is appropriate, however, where there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose.  *See id.*; *see also Parker v.*

*Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (citation omitted).

In this case, the ALJ failed to fulfill his duty to develop the record with regard to, among other things, a possible mental impairment.  Dr. Shapiro's report, which Plaintiff's counsel presented to this Court, fills that gap.  The report establishes that Plaintiff has a full scale IQ score of fifty-seven, which meets the requirement of Listing 12.05(B).  The fact that Plaintiff's IQ was tested after her twenty-second birthday is of no consequence because mental retardation is a "life long condition" and there is no evidence of a change in Plaintiff's mental condition.  *See Vasquez-Ortiz*, 48 F. Supp. 2d at 257.  Therefore, the Court finds that Plaintiff is disabled under Listing 12.05(B).  Accordingly, the Court reverses the Commissioner's decision with a directed finding of disability rather than remanding for further proceedings.


## IV. CONCLUSION

After carefully reviewing the entire record in this case, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the decision denying disability benefits is **REVERSED** with a directed finding of disability and **REMANDED** to the Commissioner for the sole purpose of calculating benefits owing to Plaintiff as a result of that directed finding; and the Court further

**ORDERS** that, because the referral of this matter to a magistrate judge under Local Rule

72.3 has been **RESCINDED**, any appeal that a party takes from this Order shall be to the Court

of Appeals for the Second Circuit.

**IT IS SO ORDERED.**

Dated: August 7, 2008
         Syracuse, New York

                                        _____
                                        Frederick J. Scullin, Jr.
                                        Senior United States District Court Judge